UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

-----------------------------------X

Securities and Exchange Commission,

        *Plaintiff*,              **MEMORANDUM & ORDER**

  - against -             No. 05-cv-00438(KAM)(RLM)

Herman's World of Sports, Inc. et
al,

        Defendants.

-----------------------------------X

**KIYO A. MATSUMOTO, United States District Judge:**

    This case has been pending for nearly twenty years and was reassigned to the undersigned judge on September 30, 2024. On January 26, 2005, the Securities and Exchange Commission ("SEC") filed a Complaint in this case against Herman's World of Sports, Inc. ("HWOS"), Thomas J. Dzwilewski ("Dzwilewski"), Michael Eisemann ("Eisemann"), and Louis Montaino ("Montaino") (collectively, "Defendants"). (ECF No. 1.) On February 15, 2005, Judge I. Leo Glasser entered Final Consent Judgments against HWOS and Dzwilewski, and on September 20, 2005, he entered Final Consent Judgments against Eisemann and Montaino. (ECF Nos. 9-10, 27-28). Judge Glasser ordered that HWOS and Dzwilewski were jointly and severally liable for disgorgement and civil penalties and also ordered Montaino and Eisemann to disgorge gains and to pay civil

penalties. (ECF No. 33, Disbursement Memorandum ("SEC Mem.") at 1-2.)

The SEC has been made aware that $50,000 attributable to these judgments has been deposited into the Court Registry Investment System ("CRIS"). (*Id.* at 2.) On September 30, 2024, the SEC moved for an order directing (1) the turnover of funds held in the CRIS to the SEC while it analyzes whether distribution to investors is feasible; (2) that any other funds collected in this action be paid directly to the SEC; and (3) to clarify that if distribution is infeasible, the SEC may direct funds to the U.S. Treasury without further order of this Court. (*Id.*) None of the defendants has filed an opposition to the motion.

This case was reassigned to the undersigned judge on September 30, 2024. For the reasons below, the Court grants the first two requests but denies the third, without prejudice to renew after the SEC has made a feasibility determination, no later than December 20, 2024. The Court directs the parties to expeditiously move this case toward conclusion.

The SEC states that it is "analyz[ing] whether a distribution to investors is feasible," despite "the funds relat[ing] to a complaint filed nearly twenty years ago," and that the SEC would similarly analyze any other amounts that may be collected. (*Id.* at 2-3.) Should the SEC determine distribution is feasible, which will include determining and quantifying the harm, identifying any

eligible harmed investors, and weighing the feasibility of distribution against administrative costs and the potential to provide meaningful recovery, the SEC states it will propose a distribution plan for the Court's approval. (*Id.* at 3.) Because the Consent Judgments in this case are nearly twenty years old, the Court finds the SEC's proposed steps - turning over funds in the CRIS and directly receiving other funds that may be collected while it analyzes the feasibility of distribution - are acceptable, but urges the SEC to expeditiously act to conclude this case. *See SEC v. Penn*, No. 14-cv-581 (VEC), 2021 WL 1226978, at *15 (S.D.N.Y. Mar. 31, 2021) (acknowledging Court's "'authority to grant the full panoply of equitable remedies so that the [SEC] can obtain complete relief'" including "authority to order the turnover of assets to be used to satisfy judgments") (internal citations and quotations omitted), *aff'd*, No. 21-1348-cv, 2022 WL 2517218 (2d Cir. July 7, 2022).

The SEC further requests that should it determine it is infeasible to distribute the amounts collected, it "may turnover the funds to the U.S. Treasury *without reverting to the Court*." (SEC Mem. at 1, 4 (emphasis added).) The SEC relies on *Liu v. SEC*, 591 U.S. 71 (2020). *Liu* held that a disgorgement award was permissible equitable relief under § 78u(d)(5) of the Securities Exchange Act if it did not exceed a wrongdoer's net profits and was awarded for victims, *id.* at 74, but left open the question of

3

whether "depositing disgorgement funds with the Treasury when it is infeasible to remit them to investors 'is consistent with the limitations of Section 78u(d)(5),'" *SEC v. Laura*, No. 18-cv-5075 (NGG) (VMS), 2020 WL 8772252, at *4 (E.D.N.Y. Dec. 30, 2020) (quoting *Liu*, 591 U.S. at 89); *see Penn*, No. 14-cv-581 (VEC), 2021 WL 1226978, at *13 (noting *Liu*'s "open question" of whether SEC could "deposit disgorgement funds with the Treasury when it is infeasible to distribute such funds to investors").

The SEC argues that *Liu*'s "open question" means it is not prohibited from depositing disgorged funds with the Treasury, and this Court may appropriately order that, if needed, the SEC can "turnover the funds to the U.S. Treasury without reverting to the Court." (SEC Mem. at 4.)[1] Although in *Liu* there was no specific order "directing any proceeds to the Treasury," the Supreme Court noted that "[i]f one is entered on remand, the lower courts may evaluate in the first instance whether that order would indeed be for the benefit of investors as required by § 78u(d)(5) and consistent with equitable principles." *Liu*, 591 U.S. at 90 and n.5 (further noting that "[t]o the extent that feasibility is relevant

---

[1] The Court notes that the SEC's motion refers to the deposited funds in the CRIS as disgorged funds (*see* SEC Mem. at 3) and bases its request to direct funds to the Treasury, if needed, specifically on *Liu*, which concerned disgorgement as permissible equitable relief under § 78u(d)(5). (SEC Mem. at 3-4.) For these reasons, the Court considers the SEC's request against the backdrop of *Liu*.

at all to equitable principles...lower courts are well equipped to evaluate the feasibility of returning funds to victims of fraud").

Indeed, courts post-*Liu* have held that disbursement to the Treasury is appropriate, where the infeasibility of distributing funds to investors was already evident, or where no harmed investors were identified. *See, e.g.*, *SEC v. O'Brien*, 674 F. Supp. 3d 85, 103 (S.D.N.Y. 2023) (finding "[d]isbursement to the Treasury [was] appropriate" where SEC contended it would be "enormously difficult, if not impossible" to identify those harmed, and where defendant did not dispute disbursement to Treasury), *aff'd*, No. 23-1071, 2024 WL 2813722 (2d Cir. June 3, 2024); *SEC v. Bronson*, 602 F. Supp. 3d 599, 618 (S.D.N.Y. 2022) (in denying Rule 60 motion, noting that sending disgorged funds to Treasury was "consistent with *Liu*" where no harmed investors to whom disgorged profits should be returned were identified in the complaint or final judgment), *aff'd*, No. 22-1045-cv, 2022 WL 5237474 (2d Cir. Oct. 6, 2022), *cert. denied*, *Bronson v. SEC*, 143 S. Ct. 2643 (2023).

Here, in contrast, despite the nearly twenty years since this case was commenced, the SEC has neither determined the feasibility of distribution nor presented facts that distribution is in fact infeasible. (SEC Mem. at 3-4.) Ultimately, if the SEC does determine distribution is infeasible, it shall update the Court so the Court may consider whether directing the amounts to the

Treasury is "for the benefit of investors as required by § 78u(d)(5) and consistent with equitable principles." *Liu*, 591 U.S. at 90; *see, e.g.*, *SEC v. Stone*, No. 22-cv-3553 (VM), 2023 WL 6387276, at *11 (S.D.N.Y. Sept. 29, 2023) ("Should the SEC...seek a disgorgement order that directs the disgorged funds to the Treasury because no harmed investors have been able to be identified, the Court may assess *at that juncture* whether such an order would be 'for the benefit of investors as required by § 78u(d)(5) and consistent with equitable principles.'" (emphasis added) (quoting *Liu*, 591 U.S. at 90)); *Penn*, No. 14-cv-581 (VEC), 2021 WL 1226978, at *14 (finding SEC's proposed approach "sensible" and "consistent with *Liu*" where SEC "committed to conducting a feasibility analysis were it to collect additional money; if it determines that distribution to investors is infeasible, *it will update the Court*" so the court "can decide whether directing such proceeds to the Treasury is permissible" (emphasis added)).

Accordingly, the Court grants the SEC's motion to turn over to the SEC the funds on deposit in the CRIS and any further amounts collected attributable to this case. The SEC is ordered to determine if a distribution is feasible no later than December 20, 2024, and if distribution is feasible, it shall inform the Court, and the SEC shall propose a distribution plan for approval no later than January 17, 2025. As noted, if the SEC determines, no later than December 20, 2024, that distribution is infeasible, it shall

inform the Court, and it may seek an order no later than January 17, 2025, directing that the funds be remitted to the U.S. Treasury.

**SO ORDERED.**

Dated:      November 27, 2024
            Brooklyn, New York

_____
KIYO A. MATSUMOTO
United States District Judge
Eastern District of New York